UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

            - against -

DASHAWN TEJADA,

                         Defendant.

**MEMORANDUM & ORDER**
17-CR-229 (MKB)
23-CV-7262 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Defendant Dashawn Tejada pleaded guilty on December 13, 2017, to Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and to using a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)–(iii). (Indictment ¶¶ 2–3, Docket Entry No. 1; Min. Entry dated Dec. 13, 2017 (reflecting plea of guilty as to counts two and three of the Indictment).) On May 10, 2019, the Court sentenced Tejada to 171 months of imprisonment — consisting of 51 months of imprisonment on the Hobbs Act robbery count and 120 months on the section 924(c) count, to run consecutively — followed by two years of supervised release.[1] (Min. Entry dated May 10, 2019; Judgment, Docket Entry No. 123.) On September 13, 2023, Tejada filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that his section 924(c) conviction should be vacated because Hobbs Act robbery is no longer a valid predicate offense under section 924(c) following the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). (Def.'s Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28

---

[1] On September 29, 2023, the case was reassigned from Judge Roslynn R. Mauskopf to the undersigned. (*See* Order Reassigning Case dated Sept. 29, 2023.)

U.S.C. § 2255 ("Def.'s Mot."), Docket Entry No. 189.)[2] On March 5, 2024, the government opposed Tejada's motion. (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 200.)

For the reasons set forth below, the Court denies Tejada's motion to vacate, set aside, or correct his sentence.

**I.  Background**

On December 30, 2015, Tejada and others charged as codefendants went to a nightclub in Queens, New York. (Presentence Investigation Report ("PSR") ¶ 1, Docket Entry No. 78.)[3] While there, they learned that professional basketball players were in the nightclub. (*Id.*) Tejada and the others waited in their parked vehicles until their intended victim, a professional basketball player ("the Target"), exited the nightclub. (*Id.* ¶ 2.) The Target got into an Uber with a companion, and Tejada and the others followed the vehicle and then "subsequently boxed in the vehicle, forcing it to stop in the middle of the road." (*Id.*) Tejada and the others ordered the occupants, including the driver, out of the vehicle at gunpoint and demanded that the Target and the driver "hand over all of their possessions." (*Id.*) The Target complied, providing Tejada and the others with his jewelry and cellphones. (*Id.*) Tejada then shot the Target in the leg. (*Id.*) Following the shooting, Tejada and the others fled the scene. (*Id.*)

On May 2, 2017, Tejada was arrested for the instant offense. (*Id.* ¶ 6.) On December 13, 2017, Tejada pleaded guilty to Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and using

---

[2] Because some of the pages of Tejada's motion are unnumbered, the Court refers to page numbers assigned by the Electronic Court Filing ("ECF") system.

[3] The PSR has two sets of consecutively numbered paragraphs 1–4 on page 3. The Court refers to the second set of numbered paragraphs below the section titled "The Offense Conduct." (*See* PSR ¶¶ 1–4, 1–4.)

a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)–(iii).  On May 10, 2019, the Court sentenced Tejada to 171 months of imprisonment to be followed by two years of supervised release.  Tejada is currently incarcerated at United States Penitentiary, Beaumont ("Beaumont USP") with a projected release date of January 22, 2030.  *See* Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited June 11, 2024).

## II. Discussion

### a. Legal standard

Pursuant to the federal habeas statute, 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in custody pursuant to a sentence imposed by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence," if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," or (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see Medunjanin v. United States*, 99 F.4th 129, 133 (2d Cir. 2024) ("[A] prisoner may petition a district court to 'vacate, set aside or correct' a sentence if 'the sentence was imposed in violation of the Constitution or laws of the United States, . . . or [the sentence] is otherwise subject to collateral attack.'" (first alteration added) (quoting 28 U.S.C. § 2255)); *Gomez v. United States*, 87 F.4th 100, 106 (2d Cir. 2023) ("A federal inmate may move the district court to 'vacate, set aside or correct' a sentence if 'the sentence was imposed in violation of the Constitution or laws of the United States . . . or [the sentence] is otherwise subject to collateral attack.'" (alterations in original) (quoting 28 U.S.C. § 2255(a))); *Walton v. Warden*, No. 21-2062, 2023 WL 5011933, at *1 (2d Cir. Aug. 7, 2023) ("[A] motion under 28 U.S.C. § 2255 is the proper means to challenge the imposition of a federal

conviction and sentence." (citing *Adams v. United States*, 372 F.3d 132, 134–35 (2d Cir. 2004))); *Gonzalez v. United States*, 792 F.3d 232, 238 (2d Cir. 2015) ("[A]ll challenges to a [federal] conviction and sentence can . . . be brought in a single § 2255 motion."). In order to prevail on a section 2255 petition, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *see also Tavarez v. United States*, 81 F.4th 234, 240 (2d Cir. 2023) ("[The Second Circuit] has long reserved § 2255 relief for prejudicial errors that are so grave, they 'result[] in a complete miscarriage of justice.'" (quoting *Kassir v. United States*, 3 F.4th 556, 564 (2d Cir. 2021))). "[I]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [district court] must dismiss the motion." *Seabrook v. United States*, No. 22-841, 2023 WL 7489961, at *2 (2d Cir. Nov. 13, 2023) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)).

   **b. Controlling Second Circuit law forecloses the relief Tejada seeks**

  Tejada argues that his conviction pursuant to section 924(c) for using a firearm during a crime of violence must be vacated due to the Supreme Court's decision in *United States v. Taylor*. (Def.'s Mot. 4–7.) Tejada argues that *Taylor* requires "the use of the categorical approach" when evaluating whether Hobbs Act robbery is a crime of violence for purposes of section 924(c), and observes that *attempted* Hobbs Act robbery "can[ no longer] provide a predicate for a [section] 924(c) offense." (*Id.* at 4.) Tejada further argues that "Hobbs Act robbery is no longer a crime of violence" because the offense may be completed through "fear of injury," which "does not necessarily require 'physical force.'" (*Id.* at 6.) As an example, Tejada

4

contends that "Hobbs Act robbery could be committed via a threat to injure 'intangible' property (*e.g.*, shares of stock), which would not involve physical force." (*Id.*)  Tejada also argues that the offense could be completed "by causing fear of future injury to intangible property," which could be conveyed by "threats to devalue some intangible economic interest." (*Id.* at 7.)  He contends that these threats would not necessarily require "threats of physical force — let alone violent physical force." (*Id.*)  Finally, Tejada argues that the Supreme Court in *Taylor* rejected the Second Circuit's prevailing "realistic probability test" as "an inappropriate way to determine whether a predicate offense satisfies § 924(c)'s elements clause," because "the test 'cannot be squared with [the clause's] terms' which 'asks whether the government must prove, as an element of its case, the use, attempted use, or threatened use of force.'" (*Id.* at 6–7 (alteration in original) (quoting *Taylor*, 596 U.S. at 857–58).)

The government argues that Tejada's motion should be denied because Hobbs Act robbery remains a crime of violence for purposes of section 924(c). (Gov't Opp'n 2–5.)  In support, the government argues that "the *Taylor* opinion left unchanged the status of *completed* Hobbs Act robbery as a crime of violence," (*id.* at 3), and contends that the Second Circuit has affirmed this conclusion, (*id.* (first citing *United States v. McCoy*, 58 F.4th 72 (2d Cir. 2023) (per curiam); and then citing *Mendez v. United States*, No. 21-1536, 2022 WL 17684586 (2d Cir. Dec. 15, 2022), *cert. denied*, 143 S. Ct. 2684 (2023))).  In addition, the government quotes *United States v. Waite* for the proposition that "nothing in the Supreme Court's decision undermines [the Second Circuit]'s settled understanding that completed Hobbs Act robberies are categorically crimes of violence." (*Id.* at 4 (quoting *United States v. Waite*, No. 18-2651, 2023 WL 3730447, at *1 (2d Cir. May 31, 2023)).)  Thus, the government contends that "binding Second Circuit precedent clearly forecloses [Tejada]'s argument." (*Id.*)  In support, the

5

government observes that "[e]very court in this Circuit to consider this issue has concluded that Hobbs Act robbery is a crime of violence under § 924(c)." (*Id.* (collecting cases).) Regarding Tejada's hypothetical Hobbs Act violations that do not involve violence or threats thereof, the government argues that the Second Circuit has already "dismissed [such] hypotheticals as being fanciful and 'without merit.'" (*Id.* at 5 (quoting *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018)).) In further support, the government contends that Tejada "must identify a 'realistic probability, not a theoretical probability' that the statute is applied in the way envisioned in the hypothetical," and that "[a]ny identified hypotheticals must be 'grounded in reality, logic, and precedent, not flights of fancy.'" (*Id.* (quoting *Hill*, 890 F.3d at 56).) Thus, the government argues that Tejada's motion must be denied because he "has neither identified any other intervening higher authority invalidating *Hill* nor offered any persuasive reason for this Court to abandon binding Second Circuit precedent."[4] (*Id.*)

"Section 924(c) imposes a mandatory consecutive term of imprisonment when 'any person' uses, as relevant here, a [firearm] 'during and in relation to any crime of violence . . . .'" *Medunjanin*, 99 F.4th at 133 (quoting 18 U.S.C. § 924(c)(1)(A)–(B)). Section 924(c) defines a crime of violence in two ways: by reference to an "elements" clause and a "residual" clause. *Id.*; *see also* 18 U.S.C. § 924(c)(3)(A)–(B). In *United States v. Davis*, the Supreme Court struck down the residual clause as "unconstitutionally vague." 588 U.S. 445, 470 (2019); *see United States v. Barrett*, 102 F.4th 60, 69 (2d Cir. 2024) (explaining that *Davis* held that the residual definition of a crime of violence was unconstitutionally vague). Under the elements clause, an

---

[4] In addition, the government notes that Tejada's section 2255 motion may be barred by the terms of his plea agreement and waiver. (*See* Gov't Opp'n 2 n.2.) However, the government does not seek to enforce the waiver against Tejada and argues that his motion should be denied on the merits. (*See generally*, Gov't Opp'n.) Accordingly, the Court considers Tejada's motion on the merits.

offense is a crime of violence if the offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see also United States v. Eldridge*, 63 F.4th 962, 964 (2d Cir. 2023) (quoting the same). "To determine whether an offense constitutes a crime of violence, courts employ the 'categorical approach'; the appropriate inquiry is whether the relevant felony 'has as an element the use, attempted use, or threatened use of physical force.'" *Medunjanin*, 99 F.4th at 134 (quoting *Taylor*, 596 U.S. at 850). Under this approach, a court does "not consider the particular facts before [it];" rather, the court must "'identify the minimum criminal conduct necessary for conviction under a particular statute' by 'look[ing] only to the statutory definitions — *i.e.*, the elements — of [the] offense.'" *United States v. Pastore*, 83 F.4th 113, 118 (2d Cir. 2023) (quoting *Hill*, 890 F.3d at 55); *see also Eldridge*, 63 F.4th at 964 (noting that a court applying the categorical approach "look[s] only to the statutory definitions — *i.e.*, the elements — of the offense and not to the particular underlying facts" (quoting *Hill*, 890 F.3d at 55)); *United States v. Jordan*, No. 19-3032, 2024 WL 445000, at *1 (2d Cir. Feb. 6, 2024) ("To determine whether the predicate offense is a crime of violence, courts apply a categorical approach under which they 'identify the minimum criminal conduct necessary for conviction under a particular statute by looking only to the statutory definitions' and 'evaluate whether this minimum conduct falls within the definition of a crime of violence under section 924(c)(3)(A).'" (quoting *Pastore*, 83 F.4th at 118)).

In *Taylor*, the Supreme Court applied the categorical approach to attempted Hobbs Act robbery and determined that it was not categorically a crime of violence. 596 U.S. at 850–52. The Court observed that attempted Hobbs Act robbery could be completed without the use of force, attempted use of force, or threatened use of force, as required to support a conviction

7

pursuant to section 924(c). *Id.* Specifically, the Court reasoned that attempted Hobbs Act robbery could be proven when one attempts (*i.e.*, takes a "substantial step" toward) threatening to use force, but does not actually do so.[5] *See id.* at 851–52.

In its decision, the Supreme Court made two additional observations. First, the Supreme Court assumed, without deciding, that completed Hobbs Act robberies are categorically crimes of violence. *Id.* at 851 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause."). Second, the Court rejected the government's argument that courts engaging in the categorical approach should also apply the "realistic probability" test set forth in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), to limit the categorical approach to only those cases that reflect "how [a] crime of conviction is normally

---

[5] The hypothetical provided by the Supreme Court in *Taylor* is as follows:
> Suppose Adam tells a friend that he is planning to rob a particular store on a particular date. He then sets about researching the business's security measures, layout, and the time of day when its cash registers are at their fullest. He buys a ski mask, plots his escape route, and recruits his brother to drive the getaway car. Finally, he drafts a note — "Your money or your life" — that he plans to pass to the cashier. The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response. When the day finally comes and Adam crosses the threshold into the store, the police immediately arrest him. It turns out Adam's friend tipped them off.
>
> There is little question the government could win a lawful conviction against Adam for attempted Hobbs Act robbery. After all, he intended to take property against the cashier's will by threat of force, and his actions constituted a substantial step toward that goal. At the same time, this example helps show why attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause. Adam did not "use" physical force. He did not "attempt" to use such force — his note was a bluff and never delivered. And he never even got to the point of threatening the use of force against anyone or anything. He may have intended and attempted to do just that, but he failed.

*Taylor*, 596 U.S. at 851–52.

committed or usually prosecuted." *Id.* at 858–59; *see also id.* (rejecting the government's contention, and explaining that *Duenas-Alvarez* was inapplicable, *inter alia*, because it involved federalism concerns relating to federal courts making judgments about the meanings of state statutes in the immigration context).

Prior to *Taylor*, the Second Circuit had held that both attempted and completed Hobbs Act robberies constitute categorical crimes of violence. *See United States v. McCoy*, 995 F.3d 32, 52–57 (2d Cir. 2021) (*McCoy I*), *cert. granted and judgment vacated sub nom. Nix v. United States*, 142 S. Ct. 2860 (2022). On remand, the Second Circuit "vacated the *McCoy I* defendants' § 924(c) convictions premised on *attempted* Hobbs Act robbery but upheld their § 924(c) convictions premised on *completed* Hobbs Act robbery, which remained a crime of violence post-*Taylor*." *Medunjanin*, 99 F.4th at 134 (citing *United States v. McCoy*, 58 F.4th 72, 73–74 (2d Cir. 2023) (*McCoy II*)). The *McCoy II* court "expressly stated . . . that the defendants' § 924(c) convictions predicated on completed Hobbs Act robbery were upheld 'for the reasons stated in [*McCoy I*].'" *Id.* (quoting *McCoy II*, 58 F.4th at 75). *McCoy I*, in turn, found that completed Hobbs Act robbery was already determined to be categorically a crime of violence in *Hill*. *McCoy I*, 995 F.3d at 54 (quoting *Hill*, 890 F.3d at 60). In addressing hypotheticals such as "obtain[ing property] by threatening to withhold care from a person in need" or by poisoning a person — means that would "not constitute physical force" — the Second Circuit held that "hypothetical possibilities [such] as the withholding of vital care, which have never been the basis of a Hobbs Act charge, are ineffective to deflect the stated thrust of [section 924(c)]." *Id.*

The Court denies Tejada's motion because controlling Second Circuit precedent establishes that completed Hobbs Act robberies are categorically crimes of violence. The Second Circuit has had several opportunities post-*Taylor* to reassess whether completed Hobbs

9

Act robberies are categorically crimes of violence and in every instance, it has affirmed its *McCoy I* and *Hill* holdings that completed Hobbs Act robberies are categorically crimes of violence. *See Barrett*, 102 F.4th at 81–82 (quoting *McCoy II* for the proposition that "nothing in *Taylor*'s language or reasoning . . . undermines this [c]ourt's settled understanding that completed Hobbs Act robberies are categorically crimes of violence" (quoting 58 F.4th at 74)); *Waite*, 2023 WL 3730447, at *1 (quoting the same); *see also United States v. Robinson*, No. 21-2906, 2024 WL 2747143, at *1 (2d Cir. May 29, 2024) (concluding the same). In addition, several district courts in this circuit that have considered this issue have reached the same conclusion. *See, e.g.*, *United States v. Bryant*, No. 22-CR-318, 2023 WL 5046811, at *2 (E.D.N.Y. Aug. 8, 2023) ("[C]ompleted Hobbs Act robbery is categorically a crime of violence."); *United States v. Burns*, No. 20-CR-537, 2023 WL 5019522, at *3 (E.D.N.Y. Aug. 7, 2023) ("*McCoy* [*II*] is squarely on point [because] the Second Circuit has held, post-*Taylor*, that completed Hobbs Act Robberies are crimes of violence pursuant to section 924(c)(3)(A)."); *Aponte v. United States*, No. 16-CV-3511, 2023 WL 3600848, at *5 (S.D.N.Y. May 23, 2023) (observing that completed Hobbs Act robbery remains a crime of violence post-*Taylor*); *United States v. Bernard*, No. 98-CR-500, 2023 WL 184443, at *1–2 (E.D.N.Y. Jan. 13, 2023) (finding that *Taylor* did not abrogate *Hill* and concluding that completed Hobbs Act robbery is categorically a crime of violence). Accordingly, the Court is bound by controlling Second Circuit precedent to deny Tejada's motion.

    c.    **Additional arguments by Tejada**

Because "special solicitude" is afforded to *pro se* litigants, the Court considers additional arguments suggested by Tejada's motion, but not expressly raised. *Ojeda v. Mendez*; No. 22-2700, 2024 WL 177706, at *1 (2d Cir. Jan. 17, 2024) ("*Pro se* submissions are reviewed with

'special solicitude,' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006))); *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) ("We liberally construe . . . briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022))).

Tejada argues that *Taylor* rejected the "realistic probability test." (*See* Def.'s Mot. 6–7 (quoting *Taylor*, 596 U.S. at 857–58).) The Court construes this argument as asserting that *Taylor* abrogated *Hill* to the extent that the Second Circuit in *Hill* relied on the "realistic probability" test to reject the hypotheticals offered by the defendants. In *Hill*, the Second Circuit held that "there must be 'a realistic probability,' . . . that the statute at issue could be applied to conduct that does not constitute a crime of violence," and required that a defendant "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." 890 F.3d at 56 (quoting *Duenas-Alvarez*, 549 U.S. at 193). In *Taylor*, however, the Supreme Court rejected the government's contention that the defendant had to identify at least "a single case in which [the government] has prosecuted someone [in the manner suggested by the hypothetical]" because the government's argument could not be squared with the categorical approach. 596 U.S. at 857–58; *see also id.* ("To determine whether a federal felony qualifies as a crime of violence, § 924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated with . . . threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force."). *Taylor* thus casts doubt on the continuing validity of *Hill*, to the extent that *Hill* and its progeny rely on a showing of a "realistic probability" that the statute would be applied in the manner suggested by a defendant's

11

hypothetical. As the Supreme Court explained, such an approach "cannot be squared" with the categorical approach. *Taylor*, 596 U.S. at 857. Accordingly, the Court finds that *Hill*'s reasoning was likely abrogated by *Taylor*.

The Second Circuit, however, has not reconsidered this issue because, in each instance, it has found itself bound by its decision in *McCoy II*, which affirmed that completed Hobbs Act robbery is a crime of violence "for the reasons stated in" *McCoy I*, which in turn relied on the likely-abrogated reasoning in *Hill*.[6] *See, e.g.*, *Barrett*, 102 F.4th at 82 ("[W]e are bound by *McCoy* [*II*] to reject [the defendant]'s argument that substantive Hobbs Act robbery is not a categorical crime of violence."); *cf. Medunjanin*, 99 F.4th at 135 (finding that the court was bound by *McCoy II* with respect to its conclusion regarding aiding and abetting liability). In *Barrett*, the defendant argued that "*McCoy* [*II*] should not control . . . because the court there never considered the hypothetical Hobbs Act robberies he posit[ed]," and therefore was not binding precedent "on that point." 102 F.4th at 82 (internal quotation marks, citation, and alteration omitted); *see also McCoy II*, 58 F.4th at 74 (noting that, unlike the defendants in *Taylor*, the *McCoy* defendants "presented no hypothetical case in which a Hobbs Act robbery could be committed without the use, attempted use, or threatened use of force against another person or his property"). The Second Circuit disagreed, noting that the defendant "ha[d] not cited any authority that permits [the Second Circuit] to disregard precedent that squarely rules on

---

[6] *See McCoy II*, 58 F.4th at 75 (affirming the defendants' completed Hobbs Act robbery convictions "for the reasons stated in [*McCoy I*]"); *see also McCoy I*, 995 F.3d at 54 (relying on *Hill* to conclude that "Hobbs Act robbery is a crime of violence"); *id.* (observing that the Second Circuit in *Hill* rejected the "hypothetical possibilities" offered by the defendants because they "have never been the basis of a Hobbs Act charge," *i.e.*, because there was not a realistic probability that the statute would be applied in the manner suggested by the defendants). This line of reasoning was likely abrogated by *Taylor*. To the extent that post-*Taylor* cases, such as *McCoy II* and *Barrett*, are binding on panels of the Second Circuit, the Court construes Tejada's motion as arguing that they were wrongly decided because of their reliance on *Hill* and *McCoy I*.

12

an issue simply because an earlier panel may not have considered additional arguments now proffered by a party." *Barrett*, 102 F.4th at 82.

Tejada does not argue that the Court should disregard binding precedent (*i.e.*, *Hill* and *McCoy I*). Rather, he argues that these cases are no longer binding on other panels of the Second Circuit because their reasoning was abrogated by the Supreme Court. (*See* Def.'s Mot. 6–7 (quoting *Taylor*, 596 U.S. at 857–58)); *see also United States v. Peguero*, 34 F.4th 143, 158 (2d Cir. 2022) ("If 'an intervening Supreme Court decision casts doubt on the prior ruling' — that is, where 'the Supreme Court's conclusion in a particular case . . . broke[] the link on which we premised our prior decision, or undermined an assumption of that decision,' — then we are not bound by our prior ruling." (quoting *Dale v. Barr*, 967 F.3d 133, 142–43 (2d Cir. 2020))); *United States v. Afriyie*, 27 F.4th 161, 168 (2d Cir. 2022) (noting that "[p]ublished panel decisions . . . are binding on future panels," except "when an 'intervening Supreme Court decision . . . casts doubt on our controlling precedent.'" (quoting *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 154 (2d Cir. 2015))); *In Re Guo*, 965 F.3d 96, 105 (2d Cir. 2020), *as amended* (July 9, 2020) ("[A]n intervening decision [of the Supreme Court] that casts sufficient doubt upon a prior ruling [can] render it non-binding."). Although this Court remains bound by the decisions of the Second Circuit and must deny Tejada's motion, the Court considers Tejada's arguments on the merits to assess whether a certificate of appealability should issue.

   d. **Certificate of appealability**

Pursuant to 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability if (1) the Court's order constitutes a "final order in a proceeding under section 2255," and (2) "the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(B), (c)(2). This means that a habeas petitioner must demonstrate "that reasonable

13

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). "This threshold question should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). "Obtaining a certificate of appealability 'does not require a showing that the appeal will succeed,' and '[courts] should not decline the application . . . merely because [they] believe[] the applicant will not demonstrate an entitlement to relief.'" *Welch v. United States*, 578 U.S. 120, 127 (2016) (quoting *Miller-El*, 537 U.S. at 337). In fact, a certificate of appealability may issue even if "every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338.

The Court finds that Tejada has made a "substantial showing" that Hobbs Act robbery is not necessarily a categorical crime of violence.[7] He argues that "Hobbs Act robbery could be

---

[7] Tejada's motion can also be construed as challenging the Court's jurisdiction to impose the sentence. Tejada argues that the Court was without jurisdiction to impose the sentence if Hobbs Act robbery does not qualify as a crime of violence for purposes of section 924(c). A criminal defendant has a constitutional right to ensure that the court of conviction had the jurisdiction to impose the sentence. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979) (noting that "[h]abeas corpus has long been available to attack convictions and sentences entered by a court without jurisdiction," and that the writ was only later "expanded to encompass claims of constitutional error as well" (citing *Ex parte Watkins*, 28 U.S. 193, 202–03 (1830) (Marshall, C. J.))); *see also* 28 U.S.C. § 2255(b) (providing that "the court shall vacate and set the judgment aside" if "the judgment was rendered without jurisdiction"); *United States v. Prado*, 933 F.3d 121, 134 (2d Cir. 2019) ("Federal courts have subject-matter jurisdiction over federal criminal prosecutions by virtue of 18 U.S.C. § 3231, which vests the district courts with the power to hear 'all offenses against the laws of the United States.'" (quoting *United States v. Yousef*, 750 F.3d 254, 259 (2d Cir. 2014))). If Tejada is correct that Hobbs Act robbery is no longer a crime of

14

committed via a threat to injure 'intangible' property (*e.g.*, shares of stock), which would not involve physical force." (Def.'s Mot. 6.) Tejada also argues that the offense could be completed "by causing fear of future injury to intangible property," which could be conveyed by "threats to devalue some intangible economic interest." (*Id.* at 7.) Hobbs Act robbery requires the government to prove, *inter alia*, (1) "the unlawful taking or obtaining of personal property from . . . another," (2) "against his will," (3) by means of (i) "actual or threatened force," (ii) "violence," or (iii) "fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). Section 924(c)(3)(A) defines a "crime of violence" as an offense that "has as an element the use, attempted use, or threated use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). As relevant to this analysis, section 924(c) requires "physical force" (whether used, attempted, or threatened) against a person or property. However, as Tejada implicitly argues, it is impossible to use physical force against intangible property. (*See* Def.'s Mot 6–7.) Thus, a "threat[] to devalue some intangible economic interest," (*id.* at 7), *could* result in (1) the taking of property from another (*e.g.*, a "ransom" payment in cash), (2) against his will, and (3) by means of "fear of injury . . . to his . . . [intangible] property," 18 U.S.C. § 1951(b)(1), which establishes all the elements required to be proven for Hobbs Act robbery. It thus seems possible to commit Hobbs Act robbery without simultaneously committing a "crime of violence" pursuant to section 924(c). Under the categorical approach, completed Hobbs Act robbery may, in fact, not be *categorically* a crime of

---

violence for purposes of section 924(c), then it is no longer an "offense[] against the laws of the United States," and the Court was without jurisdiction to impose the sentence pursuant to 18 U.S.C. § 3231. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) ("Subject-matter jurisdiction . . . 'refers to a tribunal's power to hear a case.'" (internal quotation marks omitted) (quoting *Union Pac. R. Co. v. Locomotive Eng'rs*, 558 U.S. 67, 81 (2009))). Thus, a certificate of appealability should also be issued because "reasonable jurists could debate whether" the Court was without jurisdiction to impose the sentence. *See Welch*, 578 U.S. at 127.

15

violence. As *Taylor* instructs: "[Section] 924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated with . . . threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force." 596 U.S. at 857–58. Accordingly, Tejada has made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c), and the Court issues a certificate of appealability.

### III. Conclusion

For the foregoing reasons, the Court denies Tejada's motion to vacate, set aside, or correct his sentence. Because of the "substantial showing of the denial of a constitutional right," demonstrated by Tejada's motion, the Court issues a certificate of appealability. 28 U.S.C. § 2253(c).

Dated: July 3, 2024
      Brooklyn, New York

                                        SO ORDERED:

                                               s/ MKB
                                        MARGO K. BRODIE
                                        United States District Judge